UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | 1:12-cr-00020-JAW |
| CALEB JEWETT | ) | |
| and | ) | |
| PATRICIA SMITH | ) | |

**ORDER ON MOTION FOR JOINT SENTENCING HEARING**

With some hesitation, the Court denies the Government's motion for a joint sentencing hearing because one of the Defendants has objected.

I.   **STATEMENT OF FACTS**

   **A.   The Defendants' Charge, Guilty Pleas, and Prosecution Versions**

On February 16, 2012, in a single count indictment, a federal grand jury charged Caleb Jewett and Patricia Smith with knowingly and intentionally importing into the United States fifty grams or more of methamphetamine in violation of 21 U.S.C. § 952(a). *Indictment* (ECF No. 18). On May 29, 2012, Mr. Jewett pleaded guilty, *Minute Entry* (ECF No. 50), and on June 20, 2012, Ms. Smith followed suit. *Minute Entry* (ECF No. 54). Each Defendant entered into plea agreements with substantially identical provisions. *Agreement to Plead Guilty* (ECF No. 48); *Agreement to Plead Guilty* (ECF No. 52). The Prosecution Versions of the offenses are consistent. *Gov't's Version of the Offense* (ECF No. 47); *Prosecution Version of the Offense* (ECF No. 51). In effect, Mr. Jewett and Ms. Smith each

admitted that they obtained the methamphetamine in Canada, that Mr. Jewett hid the drugs in the rear door panel of a motor vehicle, that Ms. Smith knew the drugs were hidden there, that Ms. Smith drove the motor vehicle to the Bridgewater Port of Entry, and that Mr. Jewett was a passenger in the vehicle. *Id.*

B. **The Joint Sentencing Hearing Issue**

On September 11, 2012, concerned that there might be inconsistencies between Mr. Jewett and Ms. Smith as to their respective roles in the offense, the Government moved for a joint sentencing hearing. *Mot. to Continue Sentencing Hr'g and Req. for a Jt. Sentencing Hr'g* (ECF No. 62) (*Gov't's Mot.*). Ms. Smith has not objected to a joint sentencing hearing, but Mr. Jewett has. *Def. Jewett's Opp'n to Gov't's Mot. to Continue Sentencing Hr'g and Req. for a Jt. Sentencing Hr'g* (ECF No. 64) (*Def.'s Opp'n*).

Mr. Jewett says that there is no authority for the Court to hold a joint sentencing hearing over his objection and in his view to do so would compromise the Court's obligation to make an individualized sentencing judgment. *Id.* at 1. Emphasizing that "no two defendants wend the same path to the defendant's table," Mr. Jewett fears that "a joint sentencing hearing creates the danger that individual sentencing characteristics will become lost or offset." *Id.* at 2. Mr. Jewett argues that his mitigating factors—low intelligence and attention deficit issues—are "so strikingly different from Defendant Patricia Smith's mitigating factors." *Id.*

Mr. Jewett rejects the Government's concern that if there are separate sentencing hearings, the two Defendants may present inconsistent versions of the

2

events in this case, minimizing each's own involvement and blaming the other, a likelihood that would be reduced in a joint hearing. *Id.* at 3. He says that the Government could call him to testify as a witness at Ms. Smith's sentencing hearing but asserts there would be no need for Ms. Smith to testify at his sentencing hearing since he has admitted all the relevant facts in the Presentence Report. *Id.*

## II. DISCUSSION

Whether to proceed jointly or separately at sentencing is a matter for the Court's discretion. *See United States v. Catalan-Roman*, 376 F. Supp. 2d 96, 104-05 (D.P.R. 2005) (noting that some courts facing the issue have decided to proceed jointly while others have decided to hold sequential penalty hearings, and collecting cases). Mr. Jewett is correct that he has the right to an "individualized analysis" at sentencing, but that right is not threatened by a joint sentencing hearing, absent unusual circumstances. *See, e.g., Glock v. Singletary*, 84 F.3d 385, 386 (11th Cir. 1996) (finding no merit in a capital defendant's contention that the trial court's refusal to sever his sentencing proceeding from his co-defendant's deprived him of individualized sentencing); *United States v. Rivera*, 363 F. Supp. 2d 814, 817 (E.D. Va. 2005) ("The defendants [in a capital case] have an *Eighth Amendment* right to an 'individualized determination' of their penalty phase sentence, however, this important right does not compel an individual penalty phase hearing"); *United States v. Solomon*, 02: 05cr385, 2007 U.S. Dist. LEXIS 30511, *22 (W.D. Pa. April 25, 2007) ("The care which courts afford to protect a capital defendant's constitutional right to an individualized determination does not inevitably translate

to automatic severance during capital sentencing proceedings"). These cited cases involved capital charges, where procedural safeguards are of the utmost importance and Eighth Amendment protections strongest.

The main danger of separately-scheduled sentencing hearings in a multi-defendant case is that the earlier-sentenced defendants may successfully plead for leniency based on the supposed enhanced culpability of yet-to-be-sentenced defendants. However, when the Court later faces those defendants, it may discover that its leniency was misplaced because the earlier-sentenced defendants were actually more culpable. *See Catalan-Roman*, 376 F. Supp. 2d at 106 ("[b]lame-shifting is one of the many concerns of joint proceedings"). Although this risk is lessened by the common denominator of the prosecutor, who presumably is aware of the respective roles of each defendant, it is still more difficult for one defendant to point an accusatory finger at another if the accused is in the courtroom. With this said, there may be good reasons not to hold a joint sentencing hearing in a particular case, for example, where one defendant is fearful of retribution from another, or "[w]hen there is a real risk that one co-defendant will become the other's prosecutor." *Catalan-Roman*, 376 F. Supp. 2d at 105.

Here, Mr. Jewett's primary argument is that "[a] joint sentencing creates the danger that individual characteristics will become lost or offset," *see Def.'s Opp'n* at 2, but the Court is confident that it could make individualized determinations for each of the two Defendants at a joint sentencing hearing. The Court is ultimately going to be required to impose individualized sentences on Ms. Smith and Mr.

4

Jewett and, absent unusual circumstances, it would not seem to matter for that purpose whether the sentencing hearings are held at the same time, back to back, the same week, or the same month. The Court does not know quite what to make of Mr. Jewett's stated concern that his low intelligence and attention deficit issues could adversely affect his sentence if he is sentenced jointly with Ms. Smith. Finally, it remains to be seen whether Mr. Jewett's assertions about the availability of one Defendant's testimony at the sentencing of the other Defendant are correct. A Defendant does not relinquish his or her Fifth Amendment privilege at a sentencing hearing and either Ms. Smith or Mr. Jewett could elect to remain silent at the other's sentencing even if called to testify.

Mr. Jewett has not filed a sentencing memorandum, but Ms. Smith has. *Def.'s Mem. Regarding Sentencing* (ECF No. 65). In her memorandum, Ms. Smith raises questions about drug quantity. *Id.* at 1-4. Apparently, Mr. Jewett and Ms. Smith differ as to the number of times Ms. Smith and Mr. Jewett acting together brought pills over the border, but she concedes that the discrepancy does not affect the guideline calculation. *Id.* Mr. Jewett has apparently not objected to the higher drug quantity. *Id.* It is difficult to understand how a joint sentencing hearing would affect Mr. Jewett's position on drug quantity as he has not objected to the Probation Office's calculation.

In her memorandum, Ms. Smith also seeks a role reduction, asserting that "she became involved in the scheme to import the methamphetamine pills with Mr. Jewett for the simple reason that she was Mr. Jewett's girlfriend." *Id.* at 4. She

says she had no financial stake in the transaction, was not going to receive a cut of the drugs, did not actually hide the drugs in the car, did not know where in the vehicle the drugs were hidden, and was not going to be involved in the sale of the drugs once they crossed the border. *Id.* at 4-5. In short, Ms. Smith substantially blames Mr. Jewett for her involvement in this crime. Based on her minimal participation, she seeks to have her guideline range dropped from 46 to 57 months to 18 to 24 months. *Id.* at 5.

Ms. Smith's argument poses the precise problem that a joint sentencing hearing would help eliminate. If the Court sentences Ms. Smith first, is convinced during her hearing that she was a minor player in the drug smuggling scheme, and grants her a significantly reduced sentence based on the evidence and argument at her sentencing hearing, the obverse conclusion is that Mr. Jewett is the more culpable Defendant: that he manipulated his girlfriend to become involved in drug trafficking and deserves a harsher penalty. Moreover, Mr. Jewett now must be aware that just as Ms. Smith is seeking to minimize her role, she is casting blame on him for a more significant role in the offense, and by demanding a separate hearing, Mr. Jewett is electing not to be present when Ms. Smith articulates her accusation.

However, against Ms. Smith's implication that Mr. Jewett was the more culpable of the two, there is an undercurrent that suggests that the relative culpability was at least shared between Mr. Jewett and Ms. Smith. Each of them was severely addicted to drugs at the time of the crime; there is an age difference

between Mr. Jewett, who was twenty, and Ms. Smith, who was twenty-four; and Mr. Jewett says that he suffers from low intelligence and an attention deficit issue. With this backdrop, to the extent that a joint sentencing hearing would assist either Defendant, it would appear to assist Mr. Jewett at least as much as Ms. Smith and would be a better way to arrive at the truth about each Defendant's relative role in this crime.

Ultimately, however, the Court wishes to avoid giving the impression to Mr. Jewett, however unreasonable, that he would be disadvantaged by the Court's scheduling decision. Furthermore, Mr. Jewett's defense counsel may well be aware of matters that the Court is not, and that would justify his demand for separate sentencing. Finally, there is no suggestion from Ms. Smith that separate sentencing hearings would affect her sentencing positions and no suggestion from the Government that separate hearings would affect the parties' substantive rights. In an excess of caution, therefore, the Court will not schedule a joint hearing in this case.

The Court ORDERS that Patricia Smith be scheduled for sentencing first and that Caleb Jewett be scheduled for sentencing at a separate hearing as soon as practicable after Ms. Smith's sentencing hearing.

## III. CONCLUSION

The Court DENIES the Government's Motion for a Joint Sentencing Hearing (ECF No. 62).[1] The Court ORDERS that Patricia Smith's sentencing hearing be

---

[1] The Government's September 11, 2012, motion made two requests: (1) for a continuance of Mr. Jewett's then-scheduled sentencing hearing and (2) for a joint sentencing hearing. *Gov't's Mot.*

7

scheduled first and that Caleb Jewett's sentencing hearing be scheduled as soon thereafter as practicable.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 24th day of October, 2012

---

at 1-2. On September 13, 2012, the Court granted the request for a continuance. *Order* (ECF No. 63). This Order addresses solely the remaining question: whether the rescheduled sentencing hearings should be joint or separate.